LEAVITT, Receiver of North American Trust and Banking Company, *vs.* BEERS.

The N. A. T. & B. Co. agreed with defendant that he might transfer to them, in liquidation of a balance due by him, good bonds and mortgages, &c., or, in lieu thereof, certain obligations, at par, issued by the company and guarantied by defendant. Defendant tendered to plaintiff said obligations in payment of any indebtedness that might then exist against him, in pursuance of said agreement. In a suit afterwards brought by plaintiff against defendant and refered, the referees refused to credit defendant with the obligations so tendered, and found a balance against him less in amount than the value of the obligations. *Held*, that they erred in so doing.

The production and tender of these obligations, taken in connection with the previous agreement, amounted to proof of complete payment and satisfaction of the whole of defendant's indebtedness.

And it is no answer to this, that such obligations had been illegally issued by the company, and that it was not therefore liable to pay them.

If defendant (not being a debtor) had purchased these obligations at the request of the company, an action for money paid to their use would lie, even conceding the securities to have been illegal so that no recovery could have been had against the company upon them. But if he had been a party to the illegal act, and the money had been paid in aid and furtherance of the same, no action would lie—both parties being in pari delicto. But even in that case, and in the application of that principle, if the money had been paid (as it was in the present case) in extinguishment of an indebtedness, such payment would discharge the debt. *Per* NELSON, Ch. J.

The president of a bank can not charge a commission for guarantying its paper, without showing a clear and explicit agreement to that effect made with the proper authorities. *Id.*

NOTICE to set aside referees' report. This was an action of assumpsit on the common money counts, and was refered by stipulation to Benj. W. Bonney, H. B. Cowles and John I. Palmer as referees.

The receiver claimed that the defendant (who had been president of the North American Trust and Banking Co.) was greatly indebted to the institution for divers large sums of money, against which set-offs and payments were claimed by way of defence; it was thereby mutually stipulated between the attorneys, that all the debts and demands (with the exceptions mentioned) belonging to the plaintiff, as receiver of the company, should be brought in on the hearing,

and might be met by payment, set-off or any other lawful defence.

On the first meeting of the referees, the following admissions were made by the respective parties:

The defendant admitted against himself,

1. Balance due on Arkansas state stock, July 1, 1841,............................................ $117,602.70

2. Do. on general account,......... $42,725.46
   Less 10 Indiana bonds, 19 Arkansas
   do., for which is charged in said
   general account,............... 21,592.00
   ———————— 21,133.46

3. Note of October 31, 1840,........ $27,090.21
   Interest three months,........... 474.07
   ———————— 27,564.28

4.   do.   do................... $26,836.95
   Deduct three months' interest,.... 469.64
   ———————— 26,367.31

5. Coupons on 26 Arkansas bonds,
                July 1, 1840, ... $780.00
6.   do.      do. January 1, 1841,   780.00
   Interest to 1st July, 1841,....... 89.90
   ———————— 1,649.90

                                      $194,317.65

The defendant also admitted that he was accountable to the plaintiff for 10 Indiana bonds and 19 Arkansas do., that he had borrowed from the company. The price to be established by proof.

The plaintiff then admitted the following demands of the defendant against the company:

*Credit.*

1. Balance of interest on general account,...... $2,627.44
2. Payment for 26 Arkansas bonds, amount to be
   proved, if paid out of defendant's own funds
   to go to his credit,......................... 26,573.50
3. Coupons on 7 Arkansas bonds,
                July 1, 1840,   $210.00

Leavitt v. Beers.

| | | | | | |
|---|---|---|---|---|---|
| 4. | do. | do. Aug. 1, 1841, | 210.00 | | |
| | Interest to 1st July, 1841,........ | | 18.90 | | |
| | | | | 438.90 | |

5. Exchange on coupons on $840,000
· of Arkansas bonds, due January,
1841, 9 per cent, ............ ... $2,268.00
Interest to 1st July, 1841,........ 68.04
                                            2,336.04
6.     do.   due July, 1841, 9 per cent,........   2,268.00
7. Cash paid Perkins, interest on loans,........   102.01
8. Five sterling certificates held by Beers, dated
     October 1, 1840, No. 1396 to 1400, payable six
     months after date,.......................   26,821.06
9.   do.   payable 12 months after date,........ 25,418.67

The amount paid by Beers on these to be established by proof.

It is not material to go into the evidence generally, as but a few items of any great importance are matters of dispute.

1. An assignment to Fr. Griffen by the company, dated 31st August, 1841, of certain funds, in trust, for purposes therein declared, was given in evidence by the defendant, and in which were included three promissory notes given by one Taylor of Mobile, dated 10th July, 1837, for some $50,000, secured by mortgage of lands in the state of Alabama, and in which assignment to Griffen it was recited that the notes and mortgage had been transfered to the said company by the defendant.

The defendant also proved a receipt given to him by Griffen, dated September 9, 1841, acknowledging the delivery of the above notes and mortgage to him (G.) of that date, to apply on account of the debt of the company, adding " so far as I am legally authorized by said assignment and no farther, I agree the amount shall be credited and allowed to said Beers on said account." There had been a previous assignment of securities from the defendant to the company to secure demands against him which was not produced on the trial, but was refered to by some of the documentary evidence introduced.

2. The company on the 27th January, 1841, entered into

an arrangement with the defendant stipulating that he should be allowed to transfer to them from time to time, within one year from the 1st February, 1841, in further liquidation of the balance which shall remain due from him, good and sufficient bonds and mortgages, &c., or in lieu thereof the certificates of deposit or obligations of the company issued to the fund commissioners of the state of Indiana, or those held by Wm. Vyse and guarantied by the defendant, at par.

On the 22d January, 1841, the defendant tendered to the plaintiff, as receiver of the company, certain certificates issued by it to the fund commissioners of Indiana, amounting, in the whole, to $175,000 besides interest, in payment of any indebtedness that might then exist against him, agreeably to the terms of the foregoing arrangement. And on the 27th same month, likewise, tendered certain notes issued to Wm. Vyse by the company, and which had been guarantied by the defendant, to the amount of $70,500 besides interest, for like purpose, all of which were declined by the plaintiff.

3. The defendant was appointed president of the company in July, 1838, and continued as such president, superintending and managing its fiscal concerns till October, 1840, when he resigned.

There was no agreement in respect to the salary. Evidence was given that $6000 per annum would be a reasonable sum, also that the defendant had said he should make no charge for salary while he was in arrear to the bank, and admitted he was in arrear when he resigned, and had been for a year prior to that time.

4. Evidence was also given that the defendant while president had been in the habit of guarantying the paper of the bank for the purpose of raising money to large amounts. Other officers of the institution also united in several of these guaranties. The company also occasionally guarantied the private paper of the president, in one instance to the amount of $1,000,000 for bonds of the state of Arkansas. The defendant claimed a commission for guarantying, and proof was given of the usual charge from 1 to 1½ per cent.

Leavitt v. Beers.

The referees reported in favor of the plaintiff $61,921.32, and stated the account as follows:

*Plaintiff's claims allowed.*

1841, July 1.
1. To balance of Arkansas state stock account,  $117,602.70
2. Balance of general account admitted, . . . . . .   21,133.46
3. 10 Indiana bonds at 76.63, . . . . . . . . . . . . . .      766.30
    Interest from 15th Dec., 1840, to July 1, 1841,      290.56
4. 19 Arkansas bonds redeemed from Compt.
    at their value, 15th December, 1840, at 75,..   14,250.00
    Interest to 1st July, 1841, . . . . . . . . . . . . . . . .      540.31
5. Coupons on 26 Arkansas bonds, July
                              1, 1840, $780.00
      do.     do.     do.   Jan., 1841,   780.00
    Interest to 1st July, 1841, . . . . . . . . .    81.90
                                                   ————       1,641.90

          Total, . . . . . . . . . . . . . . . . . . . . . . . .  $156,225.23

*Defendant's claims allowed.*

1. Balance of interest on general account, . . . .     $2,627.44
2. Amount paid for 26 Arkansas bonds as of
    1st April, 1840, . . . . . . . . . . . . . . . . . . . . . . . .   24,440.00
    Interest to July 1, 1841, . . . . . . . . . . . . . . . .    2,133.50
3. Coupons on 7 Arkansas bonds due July, 1840,      210.00
4.    do.      do.          do.  January, 1841,       18.90
5. Exchange on $840,000, coupons 1st July, 1841,    2,268.04
    Interest to July, 1841, six months, . . . . . . . .       68.04
6. Exchange on $840,000, coupons July, 1842,     2,268.04
7. Cash paid J. M. Perkins, interest, . . . . . . . . .      102.01
8. Salary as president, principal from 18th July,
    1838, to 28th October, 1840, two years, three
    months, ten days at $6,000 per annum, . . . . . .   13,666.66
9. Exchange on Arkansas bonds, . . . . . . . . . . . .   58,200.72
                                                          —————
                                                       $106,003.35

Leavitt v. Beers.

| | |
|---|---:|
| Balance 1st July, 1841, in favor of plaintiff, . . . . | $56,908.62 |
| Interest from 1st July, 1841, to 4th Oct., 1842, one year, three months, three days, . . . . . . . . | 5,012.70 |
| Report of referees, . . . . . . . . . . . . . . . . | $61,921.32 |

*By the Court,* NELSON, Ch. J. After the best considera-
tion I have been able to bestow upon this case, I am satisfied
the report ought not to be disturbed, unless the referees
erred in rejecting the payments made by the defendant in
pursuance of the arrangement entered into 27th January,
1841, with the company. All of the other questions dis-
cussed on the argument depend very much upon matters of
fact fairly open, upon the testimony, for the exercise of the
discretion and judgment of the referees, and upon which
their conclusions should be regarded as final.

Among these, the Taylor notes are the most important in
amount, and, perhaps, the decision in respect to them the
most questionable. But, looking at the whole case, and the
evidence more especially bearing upon this item of the ac-
count, I am inclined to think the fair inference is that they
had been passed to the company by the defendant previously
to the assignment to Griffen, not in payment of so much in-
debtedness, but as collateral only; and that the subsequent
transfer to Griffen was simply made in pursuance of such
previous understanding and in fulfillment of the same.

I admit the recitals in that assignment alone are not evi-
dence against the defendant; but the subsequent transfer
of the securities to Griffen might have been regarded by the
referees as a virtual recognition of the interest of the com-
pany in the same; and the terms of the receipt taken on the
delivery to Griffen afford pretty satisfactory evidence that
the defendant himself did not understand that they were to
be received absolutely as so much money paid.

These notes have not yet been paid by Taylor, or by any
one in his behalf, and while remaining thus outstanding and
dishonored, I think the defendant was bound to furnish
more satisfactory proof that they were taken absolutely in

Leavitt v. Beers.

discharge of so much indebtedness, than appeared, before he can claim to have them thus applied.

As respects the salary; as the amount was not fixed by agreement between him and the institution, it depended upon a quantum meruit, to be determined by the referees. They have allowed him $6,000 per annum without interest. They, doubtless, believed he had the benefit of it as it accrued and was therefore entitled to none.

They were also right in rejecting the claim for commissions. There was no agreement to allow them, nor evidence under the circumstances attending the several guaranties, from which one could be properly infered. Before any person holding the official connection of the defendant with the bank, or any one standing in that relation to an institution of the kind, can be allowed to set up a claim for superadding his own private responsibility to the responsibilities of the institution in such cases, he must first establish a most clear and explicit contract to that effect with the proper authorities; otherwise, the practice might lead to intolerable mischief and abuses.

It is unnecessary, however, to pursue these and other objections that were taken on the argument to the report and discussed by the counsel, as I have come to the conclusion that it must be set aside on the ground that the referees erred in rejecting the evidence of the tender of the certificates of deposit issued by the company to the fund commissioners of the state of Indiana; and also of the notes or certificates issued to W. Vyse, guarantied by the defendant, which stand on the same footing.

The production and tender of these, when taken in connection with the previous understanding and agreement with the company made on the 27th January, 1841, within the time there limited, amounted to proof of complete payment and satisfaction of the whole of the defendant's indebtedness.

That agreement entered into between the parties is, virtually, an order upon the debtor, directing him to pay the money due, or to become due, to a third person, which, when acted upon and the money paid, extinguishes the debt. (Chitty on Cont., 751, ed. 1842.)

The only answer that can possibly be given to this view is, that the certificates and notes of the company, which the defendant was authorized to take up in discharge of his own indebtedness, were issued in violation of the charter and contrary to law; for the payment and discharge of which the institution was not legally liable, and hence the advance of the money upon this illegal and void paper, though at the instance and request of the creditors, should not be allowed to operate as a discharge of his obligation.

If any authority was wanted to overthrow a proposition so inequitable and unjust, involving also as it does a most scandalous fraud upon the debtor, it may be found in *Armstrong* v. *Toler* (11 Wheat., 258,) and in the class of cases upon which the decision was there founded.

The case shows that if Beers (not being a debtor) had advanced this money at the request of the company, an action for money paid to their use would have been sustained for the amount, even conceding the securities to have been illegal, so that no recovery could have been had against the company upon them. If so, much more will it operate as a valid payment of a debt, due to the party at whose instance the money is advanced.

If the plaintiff in the suit to recover the money paid in such cases is a party to the illegal act, and the money is advanced in aid and in furtherance of the same, the law leaves the parties where it found them, both being in pari delicto, and no action will be sustained. But even in that case and in the application of that principle, if the money was paid, as in this, towards the extinguishment of an indebtedness, such payment would still have the effect to discharge it. The creditor would not be allowed to say, " true, I have requested you to pay this money to a third person to whom I was indebted at the time, but I have ascertained the contract out of which that debt arose was illegal and void, and I shall expect that you will therefore still pay me my debt." Such a proposition would be monstrous and revolting to every principle of right and justice.

The true answer to all this is, the creditor himself has in judgment of law already received the money on his debt by

the advance made at his request to the third person, without regard to the nature of the contract existing between him and the latter. The case stands upon the same footing as if the money had passed through the hands of the creditor to such third person; had been received and paid over by himself. There is no longer any debt remaining; it has been extinguished, or what is the same thing paid to a third party at the instance and request of the creditor.

Report set aside.